*The Law Office of*
*John Richard Bordallo Bell*
157 Veronica Way
Tamuning, Guam 96913
Tel: (671) 646-5722/3
Fax: (671) 646-5721
E-mail: john.r.b.bell@gmail.com
*Attorney for Plaintiff Susanna Kato*

UNITED STATES DISTRICT COURT
DISTRICT OF GUAM

| | |
|---|---|
| SUSANNA KATO,<br><br>Plaintiff,<br><br>vs.<br><br>UNITED AIRLINES, INC.,<br><br>Defendant. | CIVIL CASE NO. CV_____<br><br><br>**COMPLAINT FOR MONEY DAMAGES AND DEMAND FOR JURY TRIAL** |

## I. PARTIES

1. Plaintiff, Susanna Kato, ("Kato") is and at all relevant times has been a U.S. citizen residing on Guam.

2. Upon information and belief, Defendant United Airlines, Inc. ("United") is a Delaware corporation with its principal place of business in Illinois and therefore United is a citizen of Delaware and Illinois.

## II. JURISDICTION

3. This court has jurisdiction over Kato's case pursuant to 28 U.S.C Section 1331 (federal

1

questions).

4. United is charged herein with violating the Age Discrimination in Employment Act ("ADEA") of 1967, 29 U.S.C. § 621 to 29 U.S.C. § 634 as well as the Americans with Disabilities Act ("ADA"), as amended, 42 U.S.C. §§ 12111–12117, with applicable enforcement statutes including 42 U.S.C § 20003-5(f)(3) as well as 29 U.S.C. 211, *et seq.* (the ADEA uses some of the Fair Labor Standards Act enforcement provisions).

### III. DEMAND FOR JURY TIRAL

5. Kato hereby requests a jury trial on all issues raised in this complaint.

### IV. STATEMENT OF FACTS

6. Kato is a 62 year old flight attendant who first started working for Continental Airlines (later bought by United) in 1978.

7. Kato's career had been quite successful, as she had been an outstanding flight attendant and never had any negative performance or attendance issues in her nearly 40 years of service.

8. However, in 2013, Kato was diagnosed with a serious medical condition, first believed to be multiple myeloma, a type of blood and bone cancer formed by malignant plasma cells multiplying unusually.

9. Kato's was later diagnosed as MGUS (Monoclonal Gammopathy of Undetermined Significance), a condition in which an abnormal protein is in the blood, produced as a type of white blood cell/ plasma cell in bone marrow.

10. With United well aware of these serious and long-term conditions, Kato began her medical leave on July 23, 2013.

2

11. At the time, Kato's union agreement permitted up to six years of medical leave.

12. While Kato was on medical leave, a new United union agreement (Joint Collective Bargaining Agreement or "JCBA") shortened the medical leave policy from a maximum or 6 years to a maximum of 3 years.

13. In recent years, United has intentionally targeted its older flight attendants such as Kato for heightened and unwarranted scrutiny, sometimes trying to force them to retire under threat of termination, whether objectively or legally justified or not, so as to retain younger flight attendants and generally bring down the average age of its flight attendants.

14. In early October 2016, while Kato was slowly but steadily working on medical recovery and a return to work, she received an undated notice from United that, under the new JCBA, she would have to return within 180 days.

15. This undated letter from United further specified, "as part of the Joint Collective Bargaining Agreement ("JCBA"), certain changes have been made to the Leaves of Absence, including, but not limited to the maximum length of some leaves […]. Under the terms of Section 15.E of the JCBA, the duration of a Medical Leave may not exceed the shorter of the period of disability, three years, or the Flight Attendant's total length of activities service."

16. The undated letter further stated that if Kato would not return back to work on July 23, 2016, which had long since passed by the time United had even sent the letter, she would be terminated.

17. It would years later be discovered via the EEOC investigation record that United claims to have sent the undated return-to-work letter on September 30, 2016, long after the date the letter stated she must return.

3

18. United's undated letter also stated, "A Flight Attendant with more than three (3) years of service will have her/his leave expire upon reaching /her/his total length of active service or 180 days following the start of the September bid month, whichever is longer."
19. Kato consulted with several United and union officials, but nobody seemed to be able to figure out what that meant.
20. Further, Kato's access to United's bidding system had been cut off, as she had been away for years, so there was no way she could have interpreted United's vague instructions or personally calculated her return date based on "the September bid month."
21. Whatever the case, United agreed to a return-to-work trainingtraining schedule which Kato complied with.
22. Kato consulted her doctor, who said she was getting better and that it would be good for her to go back to work.
23. Per United's subsequent return-to-work instructions, from January 29, 2017 to February 13, 2017, Kato attended mandatory training in New Jersey, along with other flight attendants who were also returning after years of medical leave.
24. Kato successfully completed the training and was paid for this time.
25. However, after the training, around mid-February of 2017, due the very cold weather in New Jersey which Kato was not used to, Kato's health took a turn for the worse and she experienced a high fever and body aches.
26. Kato's fellow United flight attendants observed and assisted Kato as she returned to Guam in very poor health and exited the plane in a wheelchair.
27. At this time, her MGUS was generally asymptomatic, but she had also experienced a severe flare up of a 2008 work injury to her right knee.

4

28. United's doctor prescribed rest and pain relievers.

29. On the morning of February 17, 2017, Kato called crew scheduling to identify her schedule and was advised that she could not receive any schedule until United received her training documentation; an internal matter for United beyond Kato's control.

30. That afternoon, Kato obtained a doctor's excuse through February 28, 2017.

31. Approximately February 20, 2017, Kato called crew scheduling again as instructed by United.

32. During this call, Kato advised Cheryl Mesa from crew scheduling she would be unable to return until February 28, 2017 per her doctor's excuse.

33. Mesa from crew scheduling responded that she would designate Kato as being on sick call.

34. The same day, after speaking with Mesa, Kato called her in-flight supervisor Tina Leon Guerrero and advised that she had told Mesa that she would be out sick until February 28, 2017.

35. Leon Guerrero responded, "Okay, take care."

36. Approximately February 22, 2017, Kato gave her coworker Mark Enriquez her doctor's note to fax to United's Employee Service Center on the U.S. Mainland.

37. On February 24, 2017, a copy of Kato's medical excuse was faxed from United's Guam Human Resource office to the Employee Service Center on the U.S. Mainland.

38. United failed to give Kato any reason to believe her calling in sick would be a problem.

39. In fact, Kato's absence caused no problems for United, as she was only on-call during the time she was out sick, her seniority meant she would be called in only as a last resort, and there were never any flight staffing issues for United caused or exacerbated by Kato's illness.

40. As United would later concede, Kato's physician released her back to work with no restrictions as of February 28, 2017.

41. On March 1, 2017, United's Maria Perez informed Kato of a meeting to take place on March 3, 2017, and to call her union representative.

42. On March 3, 2017, Kato was verbally terminated at a meeting that took place in the HR conference room.

43. According to United, on March 5, 2017, a grievance was filed on behalf of Kato to contest the termination, yet that grievance remained "pending" as of at least October 2017.

44. Kato was simply told, "since you called in sick up to February 28, 2017, the company decided you are terminated."

45. No documentation was issued, as was required under the current JCBA, though years later United would claim via the EEOC investigation that United did give her a termination letter that day.

46. It was only upon this termination meeting United reasoned, for the first time, Kato should have known, based on the undated letter which Kato received in October 2016, that she was to return by February 25, 2017.

47. United's evolving after-the-fact explanation for her undocumented termination was that she was supposed to know that she was to return to active duty or active service by February 25, 2017, which United has purportedly defined as actually servicing flights as a flight attendant, as opposed to mandatory training for flight attendants.

48. United seems to have completely fabricated this explanation only after Kato was fired.

49. In any event, these expectations or definitions regarding active duty or active service are not found in the JCBA nor anywhere as far as Kato was aware.

6

50. Kato had also successfully sought required security clearances as part of her compliance with United's requests.
51. Kato had done exactly what United asked her to do in order for Kato to successfully transition back into her regular flight routine.
52. People in attendance at the March 1, 2017 termination meeting included union representatives Tammy Meigs, Jose Torres, Catherine Domondon, and Cynthia Iverson.
53. United representatives included Alethea Flores, Christina Sablan, and Maria Perez.
54. Kato objected to United's reasoning and was advised a grievance would be filed on her behalf.
55. During the January and February 2017 training in Newark, Kato met two flight attendants, Indy Persaud-Santo (aged 52) and Michelle Hagan (aged 53), Kato would later learn suffered no adverse actions despite not returning to active flight status within the same time period United claims it required Kato to return.
56. In June 2017, when Kato had requested from United a copy of the termination letter, Alethea Flores told Kato United had changed her status from terminated to retired.
57. Kato subsequently spoke to her union representative and explained she did not want to retire; she wanted to return to work.
58. United would subsequently claim during the EEOC investigation that it had internally changed her status from terminated to retired.
59. Once again, United provided no documentation of any of such change.
60. United pretextually claims Kato was fired because she did not return to active flight status quickly enough, but Kato was really fired due to her age and disability status.
61. Kato has complied with all the conditions precedent to maintain an action under the ADEA

7

and ADA.

62. Specifically, Kato filed a charge of age and disability discrimination with the Equal Employment Opportunity Commission ("EEOC") on August 30, 2017 – fewer than 300 days after the last date that she experienced discrimination on the basis of her age and disability.

63. The EEOC issued a Federal Notice of Right to Sue on September 21, 2018 and Kato received that notice on September 25, 2018.

64. Kato timely filed this lawsuit following the date that the EEOC issued a notice of right to sue.

## V. CAUSES OF ACTION

### Count 1: Violations of the Age Discrimination in Employment Act

65. Kato hereby re-alleges and incorporates paragraphs 1 through #64 above.

66. Here, at the age of 61, Kato, despite having just successfully proved to United that she could do her job, obtained her security and health clearances, and being fully qualified to do her job, she was fired specifically to be replaced by flight attendants significantly younger.

67. Substantially younger yet similarly situated flight attendants such as Persaud-Santo and Hagen, as well as others yet to be identified, were permitted to remain employed with United despite failing to service flights within the same time period United demanded of Kato.

8

## Count 2: Violations of the Americans with Disabilities Act

68. Kato hereby re-alleges and incorporates paragraphs 1 through #67 above.

69. Kato suffered discrimination and retaliation based upon her actual and perceived disability and requests for reasonable accommodations.

70. Since at least July of 2013, United was well aware that Kato took a medical leave of absence from work in order to treat hermultiple myeloma and MGUS.

71. The conditions constituted a disability which limited Kato's major life activities.

72. Katohad in fact been severely disabled and United regarded her as such.

73. Despite Kato's dramatic recovery after her leave of absence, and despite having just demonstrated for United she could satisfactorily perform each and every essential function of her job, Kato was fired anyway because United perceived her as being disabled and viewed her perceived disability as a burden to United despite there being no undue hardship thrust upon United.

## Count 3: Breach of Contract

74. Kato hereby re-alleges and incorporates paragraphs 1 through #73 above.

75. At the time Kato was fired, Kato's job was protected under the JCBA, so long as she gave United no good cause for termination.

76. Kato in fact satisfactorily performed of all her obligations under the JCBA.

77. Kato unsuccessfully exhausted her administrative remedies by attempting to file a grievance.

78. Despite having no good cause to do so, United materially breached the JCBA by unlawfully firing Kato.

## **PRAYER FOR RELIEF**

WHEREFORE, Kato prays for judgment against United as follows:

a. For back pay, front pay, and all damages incurred;

b. For attorney's fees and costs of suit;

c. For double damages under the ADEA as permitted by law.

d. For punitive damages under the ADA as permitted by law;

e. For pre-judgment and post- judgment interest as allowed by law;

f. For such other relief as the Court may deem proper.

Respectfully submitted in Hagatna, Guam on this _20_ day of __December__, 2018.

/s/_____

John Richard Bordallo Bell, Esq.

## VERIFICATION

The undersigned, being first duly sworn, deposes and says that she is a party to the above entitled matter; the foregoing document is true of her own knowledge, except as to matters which are therein stated on her information or belief and as to those matters she believes them to be true.

*/s/ Susanna Kato*

Susanna Kato, Plaintiff